# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

AUTO OWNERS INSURANCE
COMPANY,

  PLAINTIFF,

vs.             CASE NO. CV 07-J-229-NE

JEFFREY WAYNE MIMS, as
Administrator of the estate of ANTHONY
LEE MIMS, et al.,

  DEFENDANTS.

## MEMORANDUM OPINION

Pending before the court is plaintiff's motion for summary judgment (doc. 23); brief in support of said motion (doc. 24); defendant Mary Barksdale's opposition to said motion for summary judgment (doc. 27); defendants Ron Ultz, Francis Leet and Jeffery Mims' opposition to the motion for summary judgment (doc. 28); and plaintiff's reply (doc. 29).

The plaintiff filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, asserting this court has diversity jurisdiction under 28 U.S.C. § 1332. Complaint, ¶¶ 10-11.  The plaintiff seeks to have this court determine whether its policy of insurance issued to Sue D. Clark provides coverage for the claims of defendant Mims and defendants Ultz and Leet against William, Mary and Farron

Barksdale, currently pending in state court. In both state court actions, Farron Barksdale is alleged to have wrongfully killed Anthony Lee Mims and Larry Wayne Russell, both police officers. Both state court actions are pending in the Circuit Court of Limestone County, Alabama. Complaint, ¶¶ 7-9.

## FACTUAL BACKGROUND

The court finds the relevant and undisputed facts of this case to be as follows:

Plaintiff Auto-Owners Insurance Company ("Auto-Owners") issued a Dwelling Insurance Policy to non-party Sue D. Clark on May 7, 2003, with effective dates of May 7, 2003, to May 7, 2004. Plaintiff's exhibit A. That policy covered the dwelling located at 304 Horton Street, Athens, Alabama, other structures on that land, personal property, loss of rents, landlord liability, and medical payments. Plaintiff's exhibit A. Ms. Clark leased that property to her daughter, Mary Barksdale. Plaintiff's statement of undisputed facts, ¶ 7. Mary Barksdale is the mother of Farron Barksdale, who is deceased. Plaintiff's statement of undisputed facts, ¶ 14; plaintiff's exhibit C, ¶ 4; affidavit of William Barksdale (submitted as Exhibit A to doc. 28). Farron Barksdale lived at that property with his mother.[1] Affidavit of William Barksdale.

---

[1] William Barksdale is the father of Farron Barksdale. Affidavit of William Barksdale. He did not live with defendant Mary Barksdale or Farron Barksdale. *Id.* William Barksdale is no longer a party to this action (docs. 9 and 10).

In one state court action, Ron Ultz and Frances Leet, as personal representatives of the estate of Larry Wayne Russell, filed suit against Farron Barksdale, Mary Barksdale, William Barksdale, and others.  Plaintiff's exhibit C. Ultz and Leet allege that on January 2, 2004, Farron Barksdale shot and killed Larry Wayne Russell.  Plaintiff's exhibit C, ¶¶ 7-8.  That action states claims for negligence/wantonness against Farron Barksdale (Count I), negligence/wantonness against Mary and William Barksdale (Count II), negligent entrustment against Mary and William Barksdale (Count III), and other counts not relevant to this action.

In the other pending state court action, Jerry Wayne Mims, as administrator of the estate of Anthony Lee Mims, filed suit against Farron Barksdale, Mary Barksdale, William Barksdale and others.  Plaintiff's exhibit B.  Mims alleges that on January 2, 2004, Farron Barksdale shot and killed Anthony Lee Mims.  Plaintiff's exhibit B, ¶¶ 6-7.  That action states claims for negligence/wantonness against Farron Barksdale (Count I), negligence/wantonness against Mary and William Barksdale (Count II), and other counts not relevant to this action.  On January 2, 2004, Farron Barksdale was 27 years old.  Affidavit of William Barksdale.  He had a history of mental illness.  *Id*; *see also* exhibit B to defendants Ultz, Leet and Mims' opposition (containing petitions for involuntary commitment of Farron Barksdale and allegations he suffered from paranoid schizophrenia).

Both actions allege that Mary and William Barksdale wrongfully allowed Farron Barksdale access to the weapon used in the killings, after previously having removed it from Farron Barksdale's possession. Farron Barksdale pleaded guilty to multiple counts of capital murder on August 7, 2007, and was sentenced to life without parole. Plaintiff's exhibit D (Limestone County Case Action Summary in case number CC 04-78). Farron Barksdale has since died while in custody of the state. Plaintiff's statement of undisputed facts, ¶ 14.

Auto-Owners seeks a declaration that its policy does not provide coverage for the underlying state court actions against Mary and Farron Barksdale. Defendant Mary Barksdale disputes plaintiff's assertion that the only insured under the policy is Ms. Clark. The policy contains the following definition of "Insured":

**Insured** means:

a. **you**;

b. **your relatives**; and

c. any other person under the age of 21 residing with **you** who is in **your** care or the care of a **relative**.

Plaintiff's exhibit A (emphasis in original).

Defendant Mary Barksdale asserts that since she is a relative of the named insured, she too is an insured. The other defendants assert that both Mary Barksdale

and Farron Barksdale meet the definition of "insureds" as they are both relatives of Ms. Clark. Defendants Ultz, Leet and Mims' opposition, at 4. However, Mary Barksdale and the other defendants agree with the plaintiff that the only liability coverage contained in the policy is "Landlord Liability." Defendant Barksdale's opposition, at 4; defendants Ultz, Leet, and Mims' opposition, at 4 (both agreeing that plaintiff's undisputed fact number 6 is undisputed). The Landlord Liability section of the policy contains the following:

>    1. The following definitions apply to this endorsement in addition to those in the policy.
>
>        a. **Incident** means an offense(s) committed by any **insured** resulting in **personal injury** and includes, as one incident, all continuous or repeated exposure to substantially the same generally harmful condition.
>
>        b. **Personal injury** means:
>
>            (1) libel; slander or defamation of character;
>
>            (2) false arrest, detention or imprisonment, or malicious prosecution;
>
>            (3) invasion of privacy; or
>
>            (4) wrongful eviction or wrongful entry.

2. The definition of **insured** in the policy does not apply to this endorsement. As used in this endorsement, **insured** shall mean, when **you** are designated in the Declarations as:

   a. an individual, **you**.

   b. a partnership or joint venture ...

   c. a limited liability company...

   d. an organization other than a partnership....

Any person (other than your employee), or any organization while acting as **your** real estate manager is also an **insured**, but only with respect to the rental or holding out for rental to others of the **described premises**.

**COVERAGE F – LANDLORD LIABILITY**

1. **We** will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** or **property damage**.

   a. arising out of the ownership, maintenance or use of the **described premises** as a rental dwelling; and

   b. caused by an **occurrence** to which this coverage applies.

**EXCLUSIONS**

**COVERAGE F - LANDLORD LIABILITY and**
**COVERAGE G - MEDICAL PAYMENTS TO OTHERS**

No coverage applies:

1. to **bodily injury** or **property damage** reasonably expected or intended by the **insured.** This exclusion applies even if the **bodily injury** or **property damage** is of a different kind or

>     degree, or is sustained by a different person or property, than that reasonably expected or intended.
>
> ......
>
> This exclusion applies:
>
> a.   whether the **insured** may be liable as an employer or in any other capacity; and
> b.   to any obligation to share damages with or repay someone else who must pay damages because of the **bodily injury**.

Plaintiff's Exhibit A (emphasis in original).

Although not alleged by any of the underlying plaintiffs in the state court actions, and not alleged by the plaintiff in this action, defendants Ultz, Leet and Mims do state in their opposition that on January 2, 2004, Officer Mims and Sergeant Russell responded to a call at 304 Horton Street, and that Farron Barksdale shot them on the premises of the residence at that address. Defendants Ultz, Leet and Mims' opposition, at 7-8, ¶¶ 15-16. No party to this action has alleged, pleaded or otherwise stated that the insurance policy in question, issued to Ms. Clark, was issued as coverage for the rental property residence at 304 Horton Street.[2] The court does note that the policy, on the page marked "Location 001" "Premier Special Form Policy" states Location: "304 Horton St Athens AL 35611-1416." Plaintiff's exhibit A.

---

[2]Plaintiff's complaint asserts "Auto-Owners' policy covers the dwelling located at 1304 Aston Street, Athens, Alabama." Complaint, ¶ 17.a. The policy cover sheet has this address on it as the mailing address of Ms. Clark. *See* plaintiff's Exhibit A.

## SUMMARY JUDGMENT STANDARD[3]

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to

---

[3]Defendants Ultz, Leet and Mims' argue that the court should consider the plaintiff's motion as one to dismiss for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.Pro., rather than a motion for summary judgment under Rule 56, Fed.R.Civ.Pro. Defendants Ultz, Leet and Mims' opposition, at 9. They assert that the plaintiff has failed to attach any admissible evidence. Plaintiff submitted the insurance policy in question, the state court complaints, and the case action summary from Farron Barksdale's capital murder guilty pleas. The court declines to consider the motion as one to dismiss under Rule 12(b)(6).

the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.Pro. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). The non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## LEGAL ANALYSIS

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). With these standards in mind, the court considers the pending motion.

Under Alabama law, an insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the

complaint about the facts which gave rise to the cause of action against the insured. *American States Ins. Co. v. Cooper*, 518 So.2d 708, 709 (Ala.1987). If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured. *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank,* 928 So.2d 1006, 1009 (Ala.2005), citing *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So.2d 100, 102 (Ala.1977). However, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action. *Hartford Cas. Ins. Co.*, 928 So.2d at 1012. Here, the named insured, Sue D. Clark, is neither a party to this action nor a party to the underlying state court actions.

Exclusions must be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company that drafted and issued the policy. *Cincinnati Ins. Co. v. Lee Anesthesia, P.C.* 641 So.2d 247, 249 (Ala.1994); *Guaranty National Ins. Co. v. Marshall County Brd. of Ed.,* 540 So.2d 745, 748 (Ala.1989); *Alliance Ins. Co. v. Reynolds*, 494 So.2d 609 (Ala.1986).

In the insurance context, Alabama law provides that "[t]he issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide.... If the terms within a contract are plain and unambiguous, the construction of the

contract and its legal effect become questions of law for the court." *Ohio Cas. Ins. Co. v. Holcim (US),* 2007 WL 2807570, *6 (S.D.Ala.2007) (quoting *Nationwide Ins. Co. v. Rhodes*, 870 So.2d 695, 696-97 (Ala.2003))*; see also B.D.B. v. State Farm Mut. Auto. Ins. Co.*, 814 So.2d 877, 879 (Ala.Civ.App.2001) ("The interpretation of an insurance contract presents a question of law"). A court must enforce the insurance policy as written if the terms are unambiguous. *Rogers v. State Farm Fire and Cas. Co.,* 2007 WL 2966694, *8 (Ala.2007); citing *Safeway Ins. Co. of Alabama v. Herrera*, 912 So.2d 1140, 1143 (Ala.2005). See also *State Farm Fire and Casualty Co. v. Davis*, 612 So.2d 458, 466 (Ala.1993 ("if a contract is plain and free from ambiguity ... there is no room for construction, and it is the duty of the court to enforce it as written"). Whether a clause in an insurance policy is ambiguous is a question of law to be decided by the trial court. *Auto-Owners Ins. Co. v. American Cent. Ins. Co.,* 739 So.2d 1078, 1081 (Ala.1999); *First Mercury Syndicate, Inc. v. Franklin County*, 623 So.2d 1075 (Ala.1993).

The court first considers whether, under the language of the insurance policy and the allegations in the state court complaints, there could be coverage. Glaringly absent in either of the state court complaints is any allegation that the facts giving rise to those cases occurred on the property on which non-party Ms. Clark had a policy of insurance.

The court next considers whether, even if the state court complaints had alleged that the actions occurred on the property insured by plaintiff Auto-Owners, there could be coverage under the terms of the policy. The parties to this action agree that the sole coverage in the policy is "Landlord Liability." As quoted previously by the court, that coverage specifically states that "[t]he definition of insured in the policy does not apply to this endorsement." Plaintiff's exhibit A. Thus, while Mary Barksdale and Farron Barksdale are relatives of the named insured, the defendants do not dispute that the sole coverage is "Landlord Liability" which applies a separate definition not including relatives of the "insured." Defendants' arguments otherwise cannot create an ambiguity where none exists.

The court finds defendants' argument that the policy states the Landlord Liability definitions apply "in addition" to those in the policy to be wholly unsupported by the language of the Landlord Liability endorsement. The language on which defendants rely is in paragraph one under "Definitions" in the "Landlord Liability" endorsement. It does state that the "following definitions apply to this endorsement in addition to those in the policy" and sets forth definitions for "incident" (subparagraph 1.a.) and "personal injury" (subparagraph 1.b.). However, in wholly separate paragraph 2 of "Definitions" under "Landlord Liability" is the

language defendants want this court to ignore, which states, "the definition of insured in the policy does not apply to this endorsement." The court can find no ambiguity.

Even if the definition of insured was that in the body of the Insuring Agreement, as defendants argue, under "Definitions" at paragraph 7, that same "Definitions" section sets forth a definition of the term "relative." As previously stated, the policy defines "insured" as:

> **Insured** means:
>
> a.   **you**;
>
> b.   **your relatives**; and
>
> c.   any other person under the age of 21 residing with **you** who is in **your** care or the care of a **relative**.

Plaintiff's exhibit A (emphasis in original). The defendants argue that Mary and Farron Barksdale are covered under subparagraph b., "your relatives." However, paragraph 13 in the "Definitions" section further defines "relative" as

> a person who resides with **you** and is related to **you** by blood, marriage or adoption. **Relative** includes a ward or foster child who resides with you.

Exhibit A (emphasis in original). The parties do not dispute that Sue Clark is the only named insured on the policy and further do not dispute that she did not live in the residence in question. As such, Mary and Farron Barksdale do not meet the definition

of "relative" under the policy, as necessary to be considered "insureds" under the policy.

Defendants' further arguments, that the tortious actions of Farron and Mary Barksdale are covered under the policy, require a finding that these two individuals are "insureds" under the policy. Having already found such is not the case, the court finds that there can be no coverage under the policy for their actions as "insureds." Even if the court could find that Farron or Mary Barksdale were insureds, the terms for coverage for bodily injury clearly do not encompass the murder of two police officers on the premises. Defendants cite to that portion of the policy, denoted as "COVERAGE F - LANDLORD LIABILITY" on the Landlord Liability endorsement, which states

> 1. **We** will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** or **property damage**.
>
>    a. arising out of the ownership, maintenance or use of the **described premises** as a rental dwelling; and
>
>    b. caused by an **occurrence** to which this coverage applies.

Plaintiff's exhibit A.

The facts underlying the state court litigation are simply not ones which aris[e] out of the ownership, maintenance or use of the described premises as a rental

dwelling" "caused by an occurrence to which this coverage applies." The shooting of police officers is not an "occurrence" related to the use of the house as a rental property. The defendants offer no argument or case law stating otherwise.

The defendants also assert that the facts of this case are substantially similar to *Alabama Farm Bureau v. Dyer*, 454 So.2d 921 (Ala.1984). However, in that case a homeowners' policy was at issue, not a Landlord Liability policy. The issue in that case concerned whether an exclusion for "expected or intended injuries" prevented coverage under a homeowners' policy when one brother fatally shot the other, then committed suicide. *Dyer,* 454 So.2s at 922-923. In the policy here, the Landlord Liability endorsement states:

> No coverage applies:
>
> 1. to **bodily injury** or **property damage** reasonably expected or intended by the **insured.** This exclusion applies even if the **bodily injury** or **property damage** is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended.
> ......
>
> This exclusion applies:
>
> > a. whether the **insured** may be liable as an employer or in any other capacity; and
> >
> > b. to any obligation to share damages with or repay someone else who must pay damages because of the **bodily injury**.

Plaintiff's Exhibit A (emphasis in original).  The defendants assert that *Dyer* and its progeny mandate a subjective standard be applied in determining whether the injuries to the deceased law enforcement officers were "reasonably expected or intended by the insured."   The court declines to engage in this hypothetical exercise.  Having already found that Farron Barksdale was not an insured under the policy, his state of mind in fatally shooting Officer Mims and Sgt. Russell simply is not relevant to the issue of coverage.[4]

Defendants Ultz, Leet and Mims' also argue that there is coverage because "it is undisputed that the loss occurred on the insured premises and that the deceased were invited onto the premises by Farron Barksdale."  Defendants Ultz, Leet and Mims' opposition, at 10.  The court can find no evidence in support of this "undisputed" assertion.  Rather, these defendants submitted the affidavit of Stanley McNatt, which states "I learned that Officer Mims had been shot when he pulled into the drive of the residence and that Sgt. Russell had also been shot as he exited his patrol unit. I also learned that the shooter was a Farron Barksdale."  Affidavit of McNatt, ¶ 5.  This set

---

[4]The court has considered defendants' argument that plaintiff's submission of the case action summary of Farron Barksdale's guilty pleas to five counts of capital murder should be stricken because said record is an uncertified document and hearsay.  Defendants Ultz, Leet and Mims' opposition, at 16.  The court may take judicial notice of facts capable of "accurate and ready determination by resort to resources whose accuracy cannot be reasonably questioned." Rule 201(b)(2), F.R.E.  The court is of the opinion state court records are such a resource.

of facts does not support a loss occurring when "the deceased were invited onto the premises by Farron Barksdale."

Defendants' Ultz, Leet and Mims' further contend that they are entitled to coverage under the "Medical Payments Coverage." Defendants Ultz, Leet and Mims' opposition, at 17. Defendants' assertion rests wholly on the fact that "Officer Mims died on the premises, Sgt. Russell died after being transported to the hospital. Such medical expenses incurred by Mims and Russell are covered under the subject policy." Defendants' opposition (doc. 28) at 17. The declarations page contains a reference to Coverage G, Medical Payments to Others (each person/each occurrence), with policy limits of $1,000.00. Exhibit A. As the court has already found that Mary and Farron Barksdale are not insureds under the policy and that Sue Clark is not a party to any litigation with these defendants, the court finds there is no duty under this section of the policy for the plaintiff to defend or indemnify Farron and Mary Barksdale in the state court litigation.

Having considered the foregoing, the court finds the policy to be clear and unambiguous as a matter of law. Mary Barksdale and Farron Barksdale are not insureds under the policy as a matter of law. The court therefore finds there is no coverage for the claims in the underlying state court lawsuits. The plaintiff's motion

for summary judgment is due to be granted as no genuine issues of material fact remain and the plaintiff is entitled to judgment in its favor as a matter of law.

**DONE** and **ORDERED** this the 18th day of December, 2007.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE